## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

KARL B. MANUEL,                          :
                                         :
            Plaintiff,                   :
                                         :
      v.                                 :     Civil Action No. 22-1218-GBW
                                         :
DANA METZGER, *et al.*,                  :
                                         :
            Defendants.                  :

_____

Karl B. Manuel, James T. Vaughn Correctional Center, Smyrna, Delaware – *Pro se* Plaintiff

Zachary S. Stirparo, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware – Counsel for Defendants Dana Metzger, Sgt. Vincent May, Todd Koch, and Warden Robert May

James Darlington Taylor, Jr., and Marisa R. De Feo, SAUL EWING ARNSTEIN & LEHR LLP, Wilmington, Delaware – Counsel for Defendants Dana Metzger, Sgt. Vincent May, Todd Koch, and Warden Robert May

### **MEMORANDUM OPINION**

March 10, 2025
Wilmington, Delaware

**WILLIAMS, U.S. District Judge:**

## I.    INTRODUCTION

On September 19, 2022, Defendants Dana Metzger, Sgt. Vincent May, Todd

Koch, and Warden Robert May removed this civil action to this Court. (D.I. 1.) The

operative pleading is the August 10, 2022 Complaint filed in the Delaware Superior

Court by *pro se* Plaintiff Karl B. Manuel, an inmate at the James T. Vaughn

Correctional Center (JTVCC). (D.I. 1-1.) Now pending before the Court are

Defendants' motion for summary judgment (D.I. 39; *see also* D.I. 40 (statement of

facts); D.I. 41 (opening brief); D.I. 47 (answering brief); D.I. 48 (reply brief); D.I. 52

(sur-reply)) and Plaintiff's motion for summary judgment (D.I. 42; *see also* D.I. 50

(answering brief)). Also pending before the Court are six additional motions: D.I.

43 (motion for extension of time); D.I. 44 (motion to compel evidence); D.I. 45

(motion to appoint counsel); D.I. 53 (motion for preliminary injunction); D.I. 56

(motion for injunction); and D.I. 57 (motion to strike)). The Court addresses all

pending motions below.

## II.    BACKGROUND

The Complaint asserts First and Eighth Amendment claims, pursuant to 42

U.S.C. § 1983, based on allegations of racial discrimination, hate crimes, retaliation,

and deliberate indifference. (D.I. 1-1 at 3.) According to the Complaint,[1] on October 11, 2019, Defendant Koch and Sergeant Waltz (not named as a Defendant) directed Plaintiff to pack up, but Plaintiff did not respond because he was in the middle of prayer. (*Id.* at 7.) Shortly thereafter, Defendant Koch checked in on Plaintiff and said, "You haven't pack up." (*Id.*) In response, Plaintiff asked to know where he was going, to speak with one of Defendant Koch's superiors, and to see a mental health worker. (*Id.*) Defendant Koch denied Plaintiff's requests and then used pepper spray on Plaintiff's face. (*Id.*) Sergeant Waltz told Defendant Koch to stand down and informed Defendant Koch that Plaintiff had a serious mental illness. (*Id.*) Defendant Koch ignored this instruction and proceeded to pull Plaintiff out of his wheelchair by his legs, handcuff his wrists behind his back, shackle his legs, and use profanities while telling Plaintiff that he was "going to the hole." (*Id.*) Defendant Koch then used pepper spray on Plaintiff's face twice more, attempted to break Plaintiff's left wrist by applying excessive pressure to it, and yelled "Stop resisting," repeatedly, while removing Plaintiff from the tier.[2] (*Id.* at 8.)

---

[1] Defendants' statement of facts and arguments for summary judgment assume, without conceding, the truth of the allegations in the Complaint. (*See* D.I. 40 at 2 n.2; D.I. 41 at 7 n.1.) The Court, here, summarizes the allegations in the Complaint, while noting instances where the evidence of record provides supplemental or contradictory information.

[2] A JTVCC incident report reflects a significantly different account of the October 11, 2019 incident. (*See* D.I. 41-3.) Per the report, Plaintiff refused to pack and leave

Approximately thirteen days later, Plaintiff was seen by an outside neurologist for nerve damage, and the neurologist observed deep laceration marks on Plaintiff's left wrist, resulting from Defendant Koch's handcuffing and application of pressure.[3] (*Id.*) On January 1, 2020, and March 1, 2020, Plaintiff filed grievances related to

---

after he was informed that he was being transferred to a special housing unit, and Defendant Koch did not physically intervene until Plaintiff tied a shoelace around his neck with a slip known and threatened to kill himself. (*Id.* at 2.) Once Defendant Koch took hold of Plaintiff, Plaintiff yelled for help, started kicking, and refused to let go of his wheelchair, at which point another correctional officer, who has not been named as a Defendant, used pepper spray on Plaintiff's face. (*Id.*) Plaintiff would not let go of the wheelchair until pepper spray was used on his face again by a corporal, who has not been named as a Defendant. (*Id.*) Plaintiff then let go of the wheelchair, Defendant Koch was able to place Plaintiff in handcuffs, and Plaintiff was escorted to the barbershop, where he was seen by medical staff. (*Id.*) Per the report, Staff Lieutenant Casey J. Phelps approved the report the day after the incident upon review of video surveillance that confirmed Plaintiff "was in fact combative with staff." (*Id.* at 4.; *see also* D.I. 52-1 at 5.)

Plaintiff has submitted a witness affidavit regarding the incident, signed and sworn to by Zechariatt Palmer, which also states that Defendant Koch dragged Plaintiff out of his cell as Plaintiff yelled for help, that Plaintiff clung to his wheelchair, that Plaintiff was pepper sprayed in the face twice, and that Plaintiff was shackled. (D.I. 47-1 at 7.) However, the affidavit attributes the pepper spraying to Defendant Koch, asserts that Plaintiff was shackled before being pepper sprayed, and does not mention an instigating suicide attempt. (*Id.*)

[3] Plaintiff has submitted what are possibly medical notes mentioning an "offsite consult" on November 14, 2019, during which Plaintiff's wrist, hand, and thumb were assessed and determined to require further care, including evaluation by a hand surgeon and possible "fusion, bracing, o[r] arth[r]oplasty." (D.I. 47-1 at 85.)

3

the incident.[4]  (*Id.*)  Plaintiff's wheelchair was damaged during the incident, and it was subsequently repaired on June 30, 2020.  (*Id.* at 9.)

Between April 21, 2020, and July 31, 2020, Defendant Koch was involved in four searches of Plaintiff's cell, resulting in Plaintiff's property being "ransacked" and destroyed.[5]  (*Id.*)  On several occasions, Plaintiff's cell was searched when he was not present.[6]  (*Id.*)  On one occasion, Plaintiff was awoken at 3:16 AM and directed to remove a small Pan-African flag from his window.[7]  (*Id.*; *see also* 41-2 at 78.)  When Plaintiff refused, the light was left on in his cell for the rest of the

---

[4] By counsel for Defendants' estimate, Plaintiff has filed at least 193 grievances at JTVCC.  (D.I. 41-2 at 26-27.)  When asked in deposition if this sounded right, Plaintiff responded, "At the least."  (*Id.* at 27.)

[5] The record reflects that, per JTVCC policy, inmates can be subject to cell searches at any time and the list of authorized cell items is narrowly limited and clearly defined.  (D.I. 41-6 at 5-9.)  The record further reflects that search of Plaintiff's cell on April 21, 2020, and June 9, 2020, produced significant amounts of contraband, including many damaged and altered items and multiple feet of copper wire.  (*See* D.I. 41-5; D.I. 41-8.)  In one instance, Plaintiff had run copper wire across his bed and locker, and in the other, Plaintiff had dismantled his wheelchair and pulled out approximately six feet of stuffing from the inside of his mattress.  (*See id.*)

[6] The record reflects that, per JTVCC policy, inmates need not be present for cell searches.  (D.I. 41-6 at 5.)

[7] The record reflects that, by Plaintiff's own account, this incident occurred while Plaintiff was receiving routinely administered "AM" medications.  (D.I. 41-9 at 4.)  The record further reflects that, per JTVCC policy, no item "attached to any surface by an inmate" inside the cell is permitted.  (D.I. 41-6 at 5.)

4

night. (D.I. 1-1 at 9.) At some point, Defendant Koch threatened Plaintiff with profanities, referencing the previously described October 11, 2019 incident.[8] (*Id.*; *see also* D.I. 41-7.)

Plaintiff filed at least two grievances regarding Defendant Koch during this period, he requested a protective order and separation from Defendant Koch, and he was interviewed by Lieutenant Dixon (not named as a Defendant) regarding some of his concerns. (D.I. 1-1 at 9; *see also* D.I. 41-7; D.I. 41-9; D.I. 41-10.) Sometime after the start of June 2020, and before August 2020, Plaintiff also had a personal conversation with Defendant Warden May regarding the situation. (D.I. 1-1 at 12.) Defendant Warden May allegedly told Plaintiff, "To[o] bad we can[']t review the tape. They are placed to convict you[,] not to help you." (*Id.*)

On October 28, 2020, Defendant Sgt. May was involved in one search of Plaintiff's cell, which resulted in Plaintiff's electric shaver being broken.[9] (*Id.* at 10;

---

[8] According to a witness statement by John Bromwell submitted by Plaintiff, Defendant Koch made this threat when he directed Plaintiff to remove the Pan-African flag from the window, and Plaintiff refused to comply. (D.I. 47-1 at 8.) Specifically, Bromwell alleges that Defendant Koch stated, "You know what the f . . . happened the last time[,] you know what I did to you[r] a . . . ." (*Id.*) Bromwell further asserts that "this has happened on several occasion[s]." (*Id.*)

[9] Prior to this point, all facts alleged in the Complaint, and summarized above, occurred over two years before the filing of the Complaint. (*See* D.I. 1-1 at 7-9; *see also* D.I. 41-4 at 4-6.)

*see also* 41-11.) The next day, Defendant Sgt. May denied a request by Plaintiff for exchange of clothing and directed Plaintiff to wash his "bloody t-shirt, boxers, blanket, [and] sheet" in the sink.[10] (D.I. 1-1 at 10; *see also* D.I. 41-12.) Defendant Sgt. May also denied Plaintiff a hazmat bag and said, "I don't have time. What's the big deal? It's your blood." (D.I. 1-1 at 10.)

Plaintiff filed a grievance regarding the denial of a hazmat bag and exchange of clothing the same day, which prompted Lieutenant Parsons (not named as a Defendant) to confront Defendant Sgt. May about the incident in front of Plaintiff. (*Id.*; *see also* D.I. 41-12.) After this confrontation, Defendant Sgt. May told other inmates that Plaintiff had filed a grievance about them not wearing masks.[11] (D.I. 1-1 at 10; *see also* D.I. 41-13; D.I. 41-14 at 7-8.) Around this time, Defendant Sgt. May also received a disciplinary infraction related to Plaintiff's electric shaver being

---

[10] Plaintiff later explained in deposition that he experienced severe, reoccurring nosebleeds during this period. (*See* D.I. 41-2 at 92.)

[11] Per Plaintiff's grievance form, on November 1, 2020, Plaintiff "was the focal point of verbal hostile language [sic] by several inmates" because Defendant Sgt. May had told these inmates that Plaintiff had "dropped a note" and "filed a grievance" about them not wearing masks. (D.I. 41-13 at 6.) In the form, Plaintiff wrote, "Now I've been labeled a 'SNITCH,'" "I do not feel safe," and "my life [is] in danger." (*Id.*)

A signed and sworn witness statement from Tyqhaun Matthews, submitted by Plaintiff, similarly states: "On 11/1/2020 I overheard inmate workers yelling at [Plaintiff] saying that he dropped notes and filed grievances about them handling food not wear[ing] mask[s] and gloves. [Plaintiff] ask[ed] who told them that and they all said [Defendant] Sgt[.] May." (D.I. 47-1 at 36.)

broken during the search of Plaintiff's cell. (D.I. 1-1 at 11.) Plaintiff later received new clothing, linens, and blanket, as compensation for Defendant Sgt. May denying Plaintiff's request for exchange of clothing and a hazmat bag.[12] (*Id.*; *see also* D.I. 41-12 at 2.)

On the same day that Defendant Sgt. May received a disciplinary infraction, November 2, 2020, Defendant Koch conducted another search of Plaintiff's cell. (D.I. 1-1 at 11.) During the search, Plaintiff's Islamic calendar was removed, his "prayer was stepped on,"[13] and his television remote control was taken. (*Id.*) The same day, Plaintiff filed a grievance against Defendant Koch. (*Id.* at 10; *see also* D.I. 41-14 at 6.) It is unclear whether Defendant Sgt. May received the disciplinary infraction before, or after, Defendant Koch's cell search.

Six days later, Plaintiff filed another grievance regarding Defendant Sgt. May. (D.I. 1-1 at 11; *see also* D.I. 41-15.) This time, the grievance was about Defendant

---

[12] Per the grievance report related to the incident, "[Plaintiff's] clothes were replaced and [Plaintiff] agreed to an informal resolution." (D.I. 41-12 at 2.)

[13] Context suggests that this quotation contains a typographical error, and that Plaintiff's prayer rug may have been stepped on. A witness statement from Tyqhaun Matthews, submitted by Plaintiff, further suggests this. (*See* D.I. 47-1 at 36 ("They went to his cell and shook it down, they went overboard destroying, throwing and stepping all over his prayer rug."))

Sgt. May denying Plaintiff "recreation because [he] was sitting on [his] prayer rug in [his] wheelchair."[14]  (D.I. 1-1 at 11.)

On November 14, 2020, Plaintiff filed another grievance.  (*Id.*; *see also* D.I. 41-16.)  This time, the grievance was about Defendants Sgt. May and Koch searching Plaintiff's cell and confiscating Plaintiff's face mask.[15]  (*Id.*)  Plaintiff believes that Defendants Sgt. May and Koch were aware of Plaintiff's respiratory issues at the time that they took the face mask because there is a breathing machine on Plaintiff's shelf in the cell.[16]  (D.I. 1-1 at 11.)

Two weeks later, Plaintiff received a disciplinary infraction from Correctional Officer Clendeny (not named as a Defendant) regarding an Islamic calendar taped to the inside of Plaintiff's cell locker door.[17]  (*Id.*; *see also* D.I. 41-2 at 118; D.I.

---

[14] Per the grievance report related to the incident, Plaintiff's grievance form was returned unprocessed, and Plaintiff was instructed to "review the Inmate Housing Rules and find out what items are permitted in the yard."  (D.I. 41-15 at 5.)

[15] The allegations in Plaintiff's grievance form related to the incident are somewhat confusingly stated, but they suggest that Plaintiff's face mask may have had writing on it, and that this may have been the reason for its removal.  (D.I. 41-16 at 6.)

[16] Later in deposition, Plaintiff alleged that he has an asthmatic condition.  (D.I. 41-2 at 114.)

[17] As previously mentioned, the record reflects that, per JTVCC policy, no item "attached to any surface by an inmate" inside the cell is permitted.  (D.I. 41-6 at 5.) The record also reflects that, per JTVCC policy, authorized religious items must be approved by the Chaplain, purchased through commissary, and cannot exceed "two

41-17.)  Plaintiff believed that this disciplinary infraction was based on information relayed by Defendant Sgt. May to the lower-ranking Clendeny because Defendant Sgt. May had ordered Plaintiff to "cuff up," confiscated Plaintiff's Islamic/religious items, and took a legal pad on which Plaintiff was drafting the instant Complaint against Defendants Sgt. May and Koch.  (D.I. 1-1 at 11.)  Plaintiff filed a grievance regarding this incident.  (*Id.*; *see* D.I. 41-17.)  Two days after receiving the disciplinary infraction, Plaintiff was found not guilty because camera footage showed that Plaintiff was right about Defendant Sgt. May's involvement.[18]  (D.I. 1-1 at 12; *see also* D.I. 41-18.)

Four days later, Plaintiff filed another grievance when Defendant Sgt. May again denied Plaintiff the exchange of bloody clothing.  (D.I. 1-1 at 12.)

Based on the foregoing, the Complaints seeks $225,000 in compensatory and punitive damages, an additional $25,000 for mental and emotional damages, and "any further relief this Court deems justified and proper."  (*Id.* at 13.)

---

white religious headwear pieces, one religious medallion, pendant, or cross, one rosary or Dhikr beads, and one prayer rug."  (*Id.* at 8.)

[18] Plaintiff later clarified in deposition that he had never seen this footage; this information had been relayed to Plaintiff by unnamed correctional officers.  (D.I. 41-2 at 127-28.)

## III.  LEGAL STANDARDS

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).  A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Where the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of

production shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460–61.

The court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true . . . ." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). If "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.* at 1081 (internal quotation marks omitted). Conversely,

11

> Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations, quotations, and alterations omitted). The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

## IV.    **DISCUSSION**

As a preliminary matter, the Court notes that Plaintiff's motion for extension of time to file a response to Defendants' motion for summary judgment (D.I. 43) will be denied as moot because Plaintiff timely responded in opposition to Defendant's motion (*see* D.I. 47).

The Court now turns to the parties' motions for summary judgment. (*See* D.I. 39; D.I. 42.) Defendants' motion will be partially granted, and Plaintiff's motion will be denied, for the claims asserted against Defendants Metzger, Warden May, and Koch. Neither party's motion will be granted as it pertains to the claims asserted against Defendant Sgt. May. The surviving claims will be permitted to proceed.

### A.  Defendant Metzger

The Complaint makes no allegations against Defendant Metzger.  A defendant in a civil rights action "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved;" personal involvement in the alleged wrong is required. *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). Accordingly, as to the claims raised against Defendant Metzger, the Court will grant summary judgment in Defendants' favor.

### B.  Defendant Warden May

Next, the Complaint alleges that, at some time prior to August 2020, Plaintiff spoke to Defendant Warden May regarding Defendant Koch and the October 11, 2019 incident, and Defendant Warden May responded by saying, "To[o] bad we can[']t review the tape.  They are placed to convict you[,] not to help you."  (D.I. 1-1 at 12; *see also* D.I. 41-2 at 30-31.)  The Complaint contains no other specific, personal allegations against Defendant Warden May, and the allegation above appears time-barred.[19]

---

[19] Claims brought under § 1983 are subject to the statute of limitations for personal injury actions in the state in which the suit is brought.  *See O'Connor v. City of Newark*, 440 F.3d 125, 126-27 (3d Cir. 2006).  In Delaware, absent tolling, the statute of limitations for personal injury claims is two years from the date the cause of action accrued.  *See* 10 Del. C. § 8119; *Smith v. Delaware*, 236 F. Supp. 3d 882, 888 (D. Del. 2017) (citations omitted).  Accrual of a cause of action under § 1983 begins when a plaintiff "knew or should have known of the injury upon which its action is based." *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir.

Additionally, the response by Defendant Warden May alleged above appears to be contradicted by the record. *See Scott*, 550 U.S. at 380. For example, the Complaint alleges that, in December 2020, Plaintiff was found not guilty of a disciplinary infraction based on camera footage, meaning, surveillance tape was reviewed, and it helped Plaintiff. (D.I. 1-1 at 12.) Further, an incident report submitted by Plaintiff states that video surveillance was reviewed following the October 11, 2019 incident as well. (D.I. 52-1 at 5.) Because the Complaint's sole personal allegation about Defendant Warden May appears to be both time-barred and contradicted by the record, the Court will grant summary judgment in Defendants' favor as to the claims raised against Defendant Warden May.

C.    Defendant Koch

Turning next to Defendant Koch, the Complaint asserts a series of allegations, some of which are time-barred, as the record does not establish that tolling renders timely any claim arising from Plaintiff's allegations predating August 10, 2020. The remaining, timely allegations are that Defendant Koch conducted searches of Plaintiff's cell on November 2, 2020 and November 14, 2020. (D.I. 1-1 at 10-11.) Plaintiff believes that the first search was retaliation for Plaintiff's grievance against Defendant Sgt. May. (*Id.* at 10; *see also* D.I. 41-14 (grievance report).) During the

---

1998). Absent tolling, claims arising from facts alleged to have occurred on or after August 10, 2020 are timely in this case. (*See* D.I. 1-1.)

search, Plaintiff's prayer rug was stepped on and his Islamic calendar and television remote were confiscated. (D.I. 1-1 at 10.) During the second search, Plaintiff's face mask was taken, even though Plaintiff has respiratory issues. (*Id.* at 11; *see also* D.I. 41-16 (grievance report).)

First, Plaintiff cannot state a § 1983 claim based merely on deprivation of property during these two searches of his cell because "the prohibition against unreasonable searches and seizures does not apply to a prison cell," *Hudson v. Palmer*, 468 U.S. 517, 526 (1984), and adequate state post-deprivation remedies were available to Plaintiff, *see id.* at 533; *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000). The JTVCC grievance process was available to Plaintiff, and he made use of it in both instances. (*See* D.I. 1-1 at 10-11; *see also* D.I. 41-14; D.I. 41-16.)

Second, a § 1983 condition of confinement claim cannot be reasonably inferred from Defendant Koch allegedly taking Plaintiff's face mask during the November 14, 2020 cell search. A § 1983 claim alleging a violation of Eighth Amendment rights always requires proof of two elements: (1) that the deprivation alleged is "objectively sufficiently serious," such that the plaintiff was denied "the minimal civilized measure of life's necessities," and (2) that the defendant official possessed a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). To establish an Eighth Amendment

condition of confinement claim, a prisoner must prove "'deliberate indifference' to inmate health or safety" by a defendant.  *Id.* at 834.  Establishing deliberate indifference requires more than simple negligence; a defendant must exhibit disregard of a known and excessive risk to the prisoner's health or safety.  *Id.*; *see also Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (stating that actual knowledge or awareness is required).

Drawing all reasonable inferences in Plaintiff's favor, a question may remain regarding whether the alleged deprivation of Plaintiff's face mask was sufficiently serious to constitute a violation of the Eighth Amendment, given the timing of the incident in late 2020, Plaintiff's advanced age, and his alleged asthmatic condition. (*See* D.I 41-2 at 114.)  Yet even if the deprivation could be found sufficiently serious, absent from the record is evidence indicating that Defendant Koch knew such. Regarding the subjective *mens rea* requirement, Plaintiff has alleged that there was a breathing machine on his shelf in his cell at the time that the face mask was taken. (*See* D.I. 1-1 at 11.)  Without more, the Court cannot conclude that Defendant Koch possessed a sufficiently culpable state of mind to render his alleged taking of Plaintiff's face mask an Eighth Amendment conditions-of-confinement violation.

Third, although "[r]etaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable

16

under 1983,"[20] *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990), § 1983 retaliation by Defendant Koch cannot be reasonably inferred from the two alleged November 2020 cell searches. To state a *prima facie* case of § 1983 retaliation, Plaintiff must allege that (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;"[21] and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Where direct evidence is lacking, Plaintiff can show retaliatory motive with circumstantial "evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly

---

[20] Sentenced prisoners enjoy freedom of speech and religion, *see Pell v. Procunier*, 417 U.S. 817 (1974); *Cruz v. Beto*, 405 U.S. 319 (1972); *Cooper v. Pate*, 378 U.S. 546 (1964), and they are protected against invidious discrimination based on race, *see Lee v. Washington, 390 U.S. 333* (1968). Prisoners' freedom of speech extends to filing a grievance, informing a prison official of intent to so file, and requesting a necessary form for the purpose of so filing. *See Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2005).

[21] Drawing all reasonable inferences in Plaintiff's favor, a question remains regarding whether the two November 2020 cell searches amounted to sufficiently adverse action, *see, e.g.*, *Huertas v. Sobina*, 476 F. App'x 981, 984 (3d Cir. 2012) ("the purported conduct—interfering with [inmate's] personal mail, confiscating his photographs, and interfering with his receipt of funds—was not sufficiently adverse"), particularly when Plaintiff continued to request and file grievances thereafter, *see, e.g.*, *Crist v. Phelps*, 810 F. Supp. 2d 703, 709 (D. Del. 2011) (finding the record did not show sufficiently adverse action where inmate continued to submit written complaints thereafter).

17

retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson*, 834 F.3d at 422.

The record establishes that Plaintiff has submitted a high number of grievances and has been the subject to numerous cell searches. Yet there is an absence of evidence indicating that Plaintiff's grievances were a substantial or motivating factor for the cell searches.[22] Likewise, there is an absence of evidence indicating that Plaintiff's religion, or any other constitutionally protected activity or characteristic, was a substantial or motivating favor for the cell searches. Instead, the record reflects that, per JTVCC policy, cell searches can be conducted at any time, and that a significant amount of contraband had been found in Plaintiff's cell, including many damaged and altered items and multiple feet of copper wire (in one instance, running across Plaintiff's bed and locker), during the prior cell searches.

Based on the foregoing, Defendants have sufficiently established that searches of Plaintiff's cell served legitimate penological interests and would have been conducted, regardless of Plaintiff's protected activities and characteristics. *See Watson*, 834 F.3d at 422 (discussing the "same decision" defense to § 1983 retaliation claims); *see, e.g., Vo v. Wetzel*, No. 22-1210, 2022 WL 1467978, at *2

---

[22] The Court notes that the history between Plaintiff and Defendant Koch alleged in the Complaint is concerning, even if it does not appear to establish a causal link between Plaintiff's grievances, or other protected activities, and Defendant Koch's two November 2020 cell searches.

18

(3d Cir. May 10, 2022) (affirming summary judgment based on same decision defense, where defendants presented evidence showing that confiscated items were prohibited by institutional policies); *see generally O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (recognizing limitations on inmates' constitutional rights imposed by valid penological objectives). As such, § 1983 retaliation claims against Defendant Koch cannot be reasonably inferred from the two alleged November 2020 cell searches.

For the foregoing reasons, the Court will grant summary judgment in Defendants' favor as to claims asserted against Defendant Koch.

D.    <u>Defendant Sgt. May</u>

Finally, the Complaint asserts a series of allegations against Defendant Sgt. May, all of which appear timely. Upon review, the Court finds that Plaintiff has, at least, presented a triable § 1983 retaliation claim against Defendant Sgt. May. First, Plaintiff has alleged, and Defendants do not contest, that on October 28, 2020, and October 29, 2020, Plaintiff filed grievances against Defendant Sgt. May for breaking Plaintiff's shaver during a cell search and denying Plaintiff's request for a hazmat bag and exchange of bloody clothing and bedding. (*See* D.I. 1-1 at 10; D.I. 41-11 at 6 (grievance form); D.I. 41-12 at 8 (grievance form).) As a matter of law, the filing of a grievance qualifies as constitutionally protected conduct. (*See Watson*, 834 F.3d at 423; *Mitchell*, 318 F.3d at 530; *see generally Rauser*, 241 F.3d at 333 (stating that

19

Plaintiff must allege that he engaged in constitutionally protected conduct to make a *prima facie* case of § 1983 retaliation).)

Second, although Defendants assert that no resulting, sufficiently adverse actions have been alleged, (*see* D.I. 41 at 11; D.I. 48 at 10), the record reflects that, four or five days later, Plaintiff reported that other inmates confronted him for snitching on them based on information relayed by Defendant Sgt. May, (*see* D.I. 41-13 at 6; *see also* D.I. 47-1 at 36 (corroborating witness statement)). Drawing all reasonable inferences in Plaintiff's favor, the Court finds that a trier of fact could determine that the foregoing was a sufficiently adverse action. *See Jackson v. O'Brien*, No. 1:18-CV-00032-RAL, 2021 WL 3174687, at *5 (W.D. Pa. July 27, 2021) ("An inmate may experience an adverse action when a prison official calls him a snitch for complaining about other inmates."); *cf. Benefield v. McDowall*, 241 F.3d 1267, 1270-71 (10th Cir. 2001) (finding that officer defendant spreading rumors that inmate plaintiff was snitching on other inmates created substantial risk of harm from other inmates seeking to punish plaintiff or keep him silent); *see generally Rauser*, 241 F.3d at 333 (stating that Plaintiff must allege he suffered an adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights" to make a *prima facie* case of § 1983 retaliation).

Third, contrary to Defendants' position, (*see* D.I. 41 at 11; D.I. 48 at 10), the Court finds that a factfinder could determine that Plaintiff filing grievances against

20

Defendant Sgt. May was a substantial or motivating factor for Defendant Sgt. May spreading the rumor about Plaintiff, *see generally Rauser*, 241 F.3d at 333 (stating that Plaintiff must allege that the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action to make a *prima facie* case of § 1983 retaliation). Over the course of four or five days, Plaintiff filed two grievances against Defendant Sgt. May. Lieutenant Parsons responded by confronting and reprimanding Defendant Sgt. May, who then spread the snitching rumor about Plaintiff to other inmates, who then hostilely confronted Plaintiff. (D.I. 1-1 at 10-11; D.I. 41-12 at 7; D.I. 41-13 at 6.) This may show "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action," *Watson*, 834 F.3d at 422, sufficient to circumstantially prove retaliatory motive.

Last, Defendants asserts that all of Plaintiff's claims are barred by Eleventh Amendment sovereign immunity. (D.I. 41 at 21-22.) Drawing all reasonable inferences in Plaintiff's favor, the Court finds this argument unavailing. Plaintiff has presented, at minimum, one triable claim against Defendant Sgt. May. *See, e.g.*, *Robinson v. Danberg*, 729 F. Supp. 2d 666, 689-90 (D. Del. 2010) (dismissing claims asserted against the Delaware Department of Correction based on sovereign immunity while permitting sufficiently stated § 1983 retaliation claims against JTVCC sergeants and correctional officer to proceed). As discussed above, the

21

parties dispute the sufficiency of evidence showing retaliatory motive and adverse action, and briefing suggests that they may dispute other matters involving genuine issues of material fact as well. Accordingly, without further probing, the Court will deny both parties' motions for summary judgment as they pertain to Plaintiff's claims against Defendant Sgt. May.

## V.    **CONCLUSION**

For the above reasons, the Court grants Defendants' motion for summary judgment with respect to Defendants Metzger, Warden May, and Koch, and the Court denies Defendants' motion for summary judgment with respect to Defendant Sgt. May. (D.I. 39.) For the above reasons, the Court denies Plaintiff's motion for summary judgment. (D.I. 42.) The Court also denies Plaintiff's motion for extension of time (D.I. 43) as moot, given Plaintiff's timely response to Defendants' motion for summary judgment (*see* D.I. 47).

The Court resolves the remaining pending motions as follows. The Court denies Plaintiff's motion to compel evidence (D.I. 44), as Defendants have not failed to produce any timely requested disclosure, and Defendants represent that footage of the October 11, 2019 incident does not exist (*see* D.I. 51 at 2).[23] The Court denies,

---

[23] The Court notes that both parties have submitted copies of an incident report, indicating that the day after the October 11, 2019 incident, "[u]pon review of the video surveillance, it was determined that [Plaintiff] was in fact combative with staff." (D.I. 41-3 at 4; D.I. 52-1 at 5.) While this does not necessarily contradict

without prejudice to renew in the future, if appropriate, Plaintiff's motion to appoint

counsel (D.I. 45), based on Plaintiff's demonstrated ability to present and pursue

investigation of his case, the particular legal issues raised, and the lack of expert

evidence involved.[24]    The Court denies Plaintiff's first motion for preliminary

injunction and temporary restraining order (D.I. 53) against Defendant Koch, as

Plaintiff has not established that he is likely to succeed on the merits of his claims

against Defendant Koch, or that he will suffer irreparable harm in the absence of the

relief requested.[25]    Finally, the Court grants Defendants' motion to strike (D.I. 57)

---

Defendants' stated position, some further explanation from Defendants on this point may become necessary.

[24] A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel, *see Parham v. Johnson*, 126 F.3d 454, 456 (3d Cir. 1997); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993), but the Court has discretion to request counsel for indigent civil litigants, *see* 28 U.S.C. 1915(e)(1); *see also Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002).  Factors to be considered when assessing a request for counsel include: (1) Plaintiff's ability to present his own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of Plaintiff to pursue investigation; (4) Plaintiff's capacity to retain counsel on his own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require expert testimony. *See Pinchak*, 294 F.3d at 498 99; *Tabron*, 6 F.3d at 155-56.  The list is not exhaustive, and no single factor is determinative. *Tabron*, 6 F.3d at 157.

[25] A temporary restraining order (TRO) is "an extraordinary and drastic remedy . . . that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotation marks and citations omitted).  The purpose of a TRO is to temporarily preserve the status quo. *Hope v. Warden York Cty. Prison*, 956 F.3d 156, 160 (3d Cir. 2020).

Plaintiff's second motion for injunction and order of protection (D.I. 56), as Plaintiff's second motion is duplicative of his first motion (*compare* D.I. 53, *with* D.I. 56).

An appropriate Order will be entered.

---

The Third Circuit has defined the status quo as "the last, peaceable, noncontested status of the parties." *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 318 (3d Cir. 2015) (internal quotation marks and citations omitted). To obtain a TRO, the movant "must establish that he is likely to succeed on the merits" and will "suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Once the movant satisfies its burden on these first two factors, the court considers whether "the balance of equities tips in [the movant's] favor" and whether "an injunction is in the public interest." *Id.*